Exhibit A

Electronically FILED by Superior Court of California, County of Los Angeles on 08/16/2021 03:13 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Tang,Deputy Clerk

21STCV29101

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

2021 AUG 31 P 3: 26

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DEPUTY TUMSER; DEPUTY OROSCO; DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

**MARIO MORONES**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse
111 N. Hill St., Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):*
21STCV29101

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel C. Sharpe, Esq. (SBN: 267075); Windsor Troy; 3701 Wilshire Blvd., Suite 1111, Los Angeles, CA 90010; 323-800-5405

DATE:
*(Fecha)* 08/16/2021 — Sherri R. Carter Executive Officer/ Clerk of Court
*(Secretario)* J. Tang, Deputy *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* County of Los Angeles, by and through the Los Angeles County Sheriff's Department

under: [ ] CCP 416.10 (corporation)           [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
       [X] other *(specify):* Governmental Entity

4. [X] by personal delivery on *(date)* 08/31/21

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

Electronically FILED by Superior Court of California, County of Los Angeles on 08/06/2021 04:54 PM Sherri R. Carter, Executive Officer/Clerk of Court, by L. Castillejo,Deputy Clerk
21STCV29101

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: John Doyle

**Daniel C. Sharpe, Esq. (SBN 267075)**
**WINDSOR TROY**
**3701 Wilshire Boulevard, Suite 1111**
**Los Angeles, California 90010**
**Phone: (323) 800-5405**
**Facsimile: (323) 800-5406**

Attorneys for Plaintiff

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MARIO MORONES<br><br>PLAINTIFF<br><br>v.<br><br>COUNTY OF LOS ANGELES, by and through the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DEPUTY TUMSER; DEPUTY OROSCO; DOES 1-25, inclusive<br><br>DEFENDANTS | No. 21STCV29101<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 1st Amendment Retaliation<br>2. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Unlawful Search & Seizure<br>3. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – Excessive Force<br>4. Deprivation of Civil Rights, 42 U.S.C. § 1983 – 4th Amendment – False Arrest<br>5. Deprivation of Civil Rights, 42 U.S.C. §§ 1981, 1983 – 14th Amendment Racial Discrimination<br>6. Deprivation of Civil Rights, 42 U.S.C. § 1983 – *Monell* Liability<br>7. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 - Retaliation<br>8. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Excessive Force<br>9. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – Unlawful Search & Seizure<br>10. Deprivation of Civil Rights, Bane Act, Cal. Civil Code § 52.1 – False Arrest<br>11. Deprivation of Civil Rights, Bane Act, Cal.Civil Code § 52.1 – Racial Discrimination/Racial Profiling |

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.       This is a civil rights lawsuit filed by Plaintiff Mario Morones against the individually identified members of the Los Angeles County Sheriff's Department for the violent and unconstitutional actions committed against Plaintiff in contravention of the First, Fourth, and Fourteenth Amendments to the United States Constitution and California law.

2.       Jurisdiction for such claims is conferred upon the Superior Court for the State of California in and for the County of Los Angeles, as Plaintiff asserts claims herein that are derived from the statutes and common law recognized under the laws of California and the United States, the events that give rise to litigation occurred in and around the County of Los Angeles, and the claims asserted herein warrant damages in excess of $25,000.00.

3.       On or about May 21, 2021, Plaintiff – by and through his counsel of record – served Defendant County of Los Angeles with a Tort Claim that substantially complied with California Government Code § 910 *et seq*. and was timely pursuant to Cal. Gov. Code § 911.2. Neither Plaintiff nor his counsel of record received any formal response to the Tort Claim – either any documentation reflecting receipt of the same nor formal rejection of the Claim within 45 days in conformity with the requirements set forth under Cal. Gov. Code §§ 911.6, 911.8, and 912.4. Furthermore, the delay in proceeding with a civil lawsuit after service of the pre-litigation Tort Claim has been long recognized as a procedural, rather than substantive, requirement. (See *Cory v. City of Huntington Beach* (1974) 43 Cal.App.3d 131, 135.) As such, Plaintiff has substantially complied with the requirements of the Tort Claims Act sufficient to assert any and all state law claims herein as Defendants were given a reasonable opportunity to respond to the Tort Claim as set forth under relevant statute and case precedent prior to service of this Complaint.

**PARTIES**

4.      Plaintiff MARIO MORONES ("Plaintiff" or "Plaintiff MORONES") is an individual who at all relevant times was and is residing in the State of California, County of Los Angeles, and therefore enjoyed the protection of the laws of the State of California as well as the laws of the United States, including the protections afforded under the United States Constitution. Plaintiff is a male of Latino descent, and his physical appearance presents as such.

5.      Defendant DEPUTY TUMSER ("Defendant TUMSER") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles County Sheriff's Department, assigned identification number 612191, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant TUMSER was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department. Based on his appearance, Plaintiff asserts that Defendant TUMSER is an individual of Caucasian descent.

6.      Defendant DEPUTY OROSCO ("Defendant OROSCO") is a deputy sheriff employed by Defendant COUNTY OF LOS ANGELES as a member of the Los Angeles County Sheriff's Department, assigned identification number 505204, who at all relevant times was and is residing in the State of California, County of Los Angeles. At all times relevant, Defendant OROSCO was acting in their official capacity as an employee and representative of DEFENDANT COUNTY OF LOS ANGELES by and through their position as a law enforcement officer with the Los Angeles County Sheriff's Department. At all relevant times, Plaintiff understands and alleges herein that Defendant ORSOCO was a senior deputy or otherwise of higher rank than Defendant TUMSER and is understood to have been a supervising officer with respect to Defendant TUMSER during the course of events described herein.

7.     Defendant COUNTY OF LOS ANGELES ("COLA") is a California governmental entity charged with and responsible for appointing, promoting, instructing, disciplining, and supervising its employees, including those employed by and through the Los Angeles County Sheriff's Department, including but not limited to the individual Defendants identified herein. At all times relevant, Defendant COLA had the power, right, and duty to control the manner in which the individual defendants carried out the objectives of their employment and to assure that all orders, rules, instructions, and regulations promulgated were consistent with the United States Constitution, the California Constitution, the laws of the United States, and the laws of the State of California.

8.     Defendant DOE 1 is a law enforcement officer employed by Defendant COUNTY OF LOS ANGELES in their capacity as a Sergeant of the Los Angeles County Sheriff's Department, and who Plaintiff avers – to the best of their knowledge at the time of the filing of this Complaint – is a resident of the County of Los Angeles. At all times relevant, Defendant DOE 1 was acting in their official capacity as an employee of Defendant COUNTY OF LOS ANGELES as described herein.

9.     The unknown named defendants ("DOE" Defendants) 1 through 25 include, but are not limited to, unknown deputies, sergeants, lieutenants, and captains employed by Defendant COLA, by and through either the Los Angeles County Sheriff's Department ("LASD") or some other government agency, and either committed the misconduct and/or wrongful actions or otherwise acquiesced in the negligence or other misconduct described and attributed to the named defendants herein, resulting in injury to Plaintiff's person, well-being and property as described in more detail below. Such unknown DOE Defendants may also include policymakers who created, fostered, acquiesced, ratified, and/or maintained the policies, customs, and/or practices that caused the deprivation of Plaintiff's constitutional rights and her injuries described herein.

10. Plaintiff is ignorant of the true names and capacities of those named as DOE Defendants but will amend or otherwise update this Tort Claim upon receipt of information sufficient to identify any DOE Defendants by their true names.

11. Defendants, and each of them, committed the acts and omissions alleged herein in bad faith and with knowledge that their conduct violated well and clearly established and settled law.

12. Each and every defendant who is a natural person is sued in both their individual/personal capacity, as well as in their official capacity to the extent they had any policymaking responsibilities, supervisory duties, or other involvement sufficient to allow for claims against them in their official capacity under California or federal law.

13. At all times material herein, defendants, and each of them, were acting as the employees, agents, representatives, and officers of every other defendant herein, and within the course and scope of such employment and agency as members of the Los Angeles County Sheriff's Department.

14. Plaintiff was deprived of his interests protected by the Constitution and/or laws of the United States of America as well as the laws of the State of California. Each and every defendant caused, by commission or omission, such deprivations while acting under color of law as described herein. As a direct and proximate result of such deprivation, Plaintiff has suffered injuries to his person.

## FACTS COMMON TO ALL CLAIMS

15. Each and every allegation set forth in each and every averment of this Complaint is hereby incorporated by this reference in each and every other averment, allegation, and count set forth herein.

16. The INCIDENT is the series of events and circumstances that occurred on or about February 13, 2021, as described more fully in this pleading.

17. Prior to the events described herein, Plaintiff owned and/or operated a mobile car wash business. Plaintiff operated this business primarily out of a vehicle equipped with or otherwise

containing a pressure washer and other machinery and supplies, such that it was reasonably obvious when such machinery and supplies were in use that the vehicle was outfitted for mobile car washing services.

18.     Prior to February 13, 2021, Plaintiff was made aware of a fundraising event that was informally organized to raise money for funeral costs relating to the untimely passing of a resident in of the Florence-Graham area of Los Angeles. Plaintiff was asked to provide car wash services at a fundraising event to help raise such funds and agreed to do so.

19.     On the morning of February 13, 2021, Plaintiff arrived at or near the intersection of East Florence Avenue & Makee Avenue in Los Angeles. Plaintiff set up to assist and support in the fundraising efforts by providing car washing services and did in fact do so for several hours.

20.     Sometime in the mid-afternoon, Plaintiff began the process of packing up equipment and supplies to allow Plaintiff to drive home. Part of this process included Plaintiff slowly walking along a portion of Makee Avenue while unrolling the pressure washer hose to for storage of the same.

21.     As Plaintiff began walking backwards and unrolling the pressure washer hose, a police vehicle bearing the insignia and decals of the Los Angeles County Sheriff's Department drove down Makee Avenue. Defendant OROSCO was driving the police vehicle and Defendant TUMSER was sitting in the front passenger seat.

22.     Plaintiff heard Defendant OROSCO honk the vehicle's horn. In response, Plaintiff stepped closer to the sidewalk while continuing to walk backwards and roll up the pressure washer hose. Plaintiff did so on his assumption that Defendant OROSCO honked the horn to communicate that Plaintiff and/or others were standing too far from the sidewalk. Plaintiff therefore stepped aside in good faith compliance with his understanding of why Defendant OROSCO honked the car horn at the time, both to avoid causing any interference with use of the roadway as well as to avoid creating an impression that Plaintiff was ignoring the Defendants or otherwise being disrespectful to them.

23.     A few seconds later, Plaintiff heard Defendant TUMSER yell towards Plaintiff, "What are you doing?"

24.     At the time Defendant TUMSER yelled out to Plaintiff, it was incredibly obvious to anyone observing Plaintiff what he was doing. Plaintiff was clearly unraveling a hose next to a vehicle that was obviously outfitted as a mobile car washing station. Moreover, Plaintiff was at the location of a car wash fundraiser that had been operating for several hours at that intersection.

25.     Because Plaintiff did not understand that Defendant TUMSER suffered from any visual impairment at the time of the interaction. Plaintiff also presumed that Defendant TUMSER would not have been on duty and acting in his official capacity as a deputy sheriff for the Los Angeles County Sheriff's Department if he was suffering from vision issues or otherwise unable to observe Plaintiff from less than twenty feet away. Plaintiff therefore reasonably understood that Defendant TUMSER was attempting to initiate an interaction with Plaintiff based on his appearance as a Latino male with a shaved head. Because Plaintiff was obviously putting away a hose at a car wash fundraiser while not engaged in any activity that could be reasonably construed as suspicious – let alone illegal –Plaintiff became reasonably concerned that Defendant TUMSER was engaged in racial profiling.

26.     Pursuant to California Penal Code § 13519.4, racial profiling "presents a great danger to the fundamental principles of [the California] Constitution and a democratic society." The California Legislature deemed racial profiling to be "abhorrent" and something that "cannot be tolerated." Pursuant to California law, police officers in California "shall not engage in racial or identity profiling." (See Cal. Pen. Code § 13519.4(d)-(f).)

27.     Despite Plaintiff's concern that Defendant TUMSER was engaged in racial profiling against him, Plaintiff looked up at Defendant TUMSER and responded calmly, stating, "I'm unraveling the

hose." Plaintiff continued to do just that while slowly walking backwards, facing the general direction of the police vehicle and its occupants.

28.     Defendant TUMSER yell to Plaintiff, "What did you say?" in an accusatory tone, even though Plaintiff had responded in a loud enough voice to ensure that Defendant TUMSER could hear Plaintiff. Again, Defendant TUMSER's actions and the context in which he was initiating an interaction with Plaintiff made it reasonably obvious that Defendant TUMSER was attempting to create some sort of altercation or incident despite Plaintiff having done nothing wrong, let alone acted in a manner that justified being questioned by law enforcement.

29.     Plaintiff responded again that he was unraveling a hose and referenced the car wash fundraiser that had been held at or near the intersection for much of the day. In responding the second time, Plaintiff remained calm and respectful despite Defendant TUMSER's decision to racially profile Plaintiff and attempt to force an interaction in an apparent effort to escalate the encounter.

30.     Defendant TUMSER appeared to become upset that Plaintiff continued to respond in a calm manner by stating the obvious reality of the situation. Defendant TUMSER attempted to escalate the encounter by yelling at Plaintiff, "Do you have a problem?"

31.     Defendant TUMSER's decision to shout at Plaintiff "Do you have a problem?" did not reasonably further any legitimate criminal investigation as neither Defendant TUMSER nor Defendant OROSCO observed Plaintiff do or say anything to suggest that Plaintiff had committed a crime. It was unclear to Plaintiff in that moment whether Defendant TUMSER's question was meant to intimidate and harass Plaintiff or was stated in the hope of provoking Plaintiff. Regardless of the precise nature of Defendant TUMSER's improper motive, Defendant TUMSER was clearly attempting to escalate an interaction that lacked any legitimate investigative purpose.

32.     Plaintiff continued to slowly walk backwards as he unraveled the hose, and calmly responded, "No, I believe you have a problem." In so responding, Plaintiff politely acknowledged the reality that Defendant TUMSER was trying to instigate a confrontation with Plaintiff that served no apparent purpose reasonably related to legitimate law enforcement activity.

33.     Defendant TUMSER was waiting for an excuse to escalate the encounter he himself initiated, and apparently considered Plaintiff's acknowledgement that Defendant TUMSER appeared to have a problem with him was sufficient excuse to do so.

34.     Defendant TUMSER immediately leaped out of the police vehicle and moved toward Plaintiff in an aggressive fashion as he shouted at Plaintiff, "I said, put that hose down and come here!" Notably, Plaintiff did not hear Defendant TUMSER state any such command prior to that moment yet had no difficulty hearing Defendant TUMSER up to that point. Plaintiff understands and alleges herein that Defendant TUMSER ordered Plaintiff only once but included the words "I said" to create the false appearance that Plaintiff had disobeyed a command. Plaintiff had in fact cooperated with every statement made to him by Defendant TUMSER, including responding honestly to all his questions.

35.     Plaintiff observed Defendant TUMSER's combative body language, facial gestures, and aggressive tone, all of which reasonably indicated that Defendant TUMSER was animated and upset. Plaintiff became fearful for his safety and what Defendant TUMSER may do to him. Despite his fear of Defendant TUMSER, Plaintiff promptly followed Defendant TUMSER's instructions and stopped unraveling the pressure washer hose, dropping it to the ground. Plaintiff then began slowly walking towards Defendant TUMSER pursuant to Defendant TUMSER's command.

36.     At this point, Defendant TUMSER was now giving Plaintiff specific orders which any reasonable person in Plaintiff's position would understand meant Plaintiff was not free to walk away from Defendant TUMSER or otherwise leave the scene of the interaction. As such, Plaintiff

1    reasonably understood he was now being detained by Defendant TUMSER with the supervision and

2    approval of Defendant OROSCO.

3    37.     At no point prior to ordering Plaintiff to cease unraveling the pressure washer hose and

4
     "come here" did either Defendant TUMSER or Defendant OROSCO observe any actions or
5
6    statements by Plaintiff that would give rise to a reasonable suspicion that Plaintiff had committed or

7    was in the process of committing any crime. The only observations that the Defendants had made

8    with respect to Plaintiff up to that point were: (1) Plaintiff attempting to put away car washing

9    equipment at a carwash fundraiser that was ongoing for several hours at that location; (2) Plaintiff

10   calmly responding to Defendant TUMSER's question "what are you doing?" by acknowledging the

11
     obvious; and (3) responding to Defendant TUMSER's clumsy, racially motivated attempt to escalate
12
13   the encounter by asking if Plaintiff "had a problem" by once again acknowledging the obvious – that

14   Defendant TUMSER appeared to be the one who had a problem given that Defendant TUMSER was

15   instigating conflict with a private citizen in violation of California law forbidding racial profiling.

16   38.     The United States Supreme Court has long held that detaining an individual based on the

17   perception of non-cooperation or disrespect is an unconstitutional abuse of police powers under the

18
     Fourth Amendment. (See Florida v. Bostick, 501 U.S. 429, 437 (1991) ("We have consistently held
19
20   a refusal to cooperate, without more, does not furnish the minimal level of objective justification

21   needed for a detention or seizure"); see also Martiszus v. Washington County, 325 F.Supp.2d 1160,

22   1170 (D. Or. 2004) (detention "for essentially being disrespectful" violates the Fourth Amendment

23   prohibition on unreasonable seizures).)

24   39.     Because Defendant TUMSER did not have a reasonably articulable suspicion that Plaintiff

25   was involved in any criminal activity, Defendant TUMSER's decision to detain Plaintiff was based

26   on his frustration that Plaintiff did not demonstrate adequate deference to him in the face of being
27

28

racially profiled, which plainly violated Plaintiff's rights under California law and the Fourth Amendment to the United States Constitution.

40.     Defendant TUMSER, who was now engaged in an illegal detention of Plaintiff's person, asked Plaintiff whether he "had warrants" or was on probation. Defendant TUMSER did not bother to ask Plaintiff to identify himself or otherwise take steps to confirm Plaintiff's identity so that Defendant TUMSER could independently verify the information he requested. Presumably, Defendant TUMSER would have wanted to verify Plaintiff's identity if Defendant TUMSER's goal was to conduct a lawful detention pursuant to a legitimate criminal investigation of whether Plaintiff was subject to either a warrant or probation.

41.     Plaintiff calmly and honestly denied that he was on probation or had any warrant issued for his arrest.

42.     Plaintiff then slowly gestured with his right hand out and away from his body, pointing towards his back pants pocket, and stated to Defendant TUMSER that Plaintiff's wallet contained his identification. Plaintiff did so to show that he was not a threat to Defendant TUMSER or anyone else, and to offer his identification in a good faith effort to peacefully end Defendant TUMSER's illegal detention of Plaintiff.

43.     Sadly, Defendant TUMSER quickly proved that he had no actual interest in verifying Plaintiff's identity but instead was looking for an opportunity to use violent force on Plaintiff.

44.     Defendant TUMSER immediately grabbed Plaintiff's right arm and twisted it behind Plaintiff's back, wrenching Plaintiff's right hand up towards Plaintiff's shoulder blade in a move that has come to be known colloquially as "chicken winging." Defendant TUMSER's violent maneuver caused Plaintiff to experience sharp, extreme pain to his right shoulder and arm.

45.     Defendant TUMSER's violent escalation of the situation was not reasonably based on any rational fear of Plaintiff, but instead was motivated by Defendant TUMSER's desire to hurt Plaintiff

out of some combination of racial animus and perceived disrespect. Plaintiff merely acknowledged the existence and location of personal identification while being detained. Moreover, Plaintiff and Defendants were outside in broad daylight and Plaintiff was standing a few feet from Defendant TUMSER. No reasonable officer could have honestly concluded that pointing out the existence of identification necessitated violently restraining Plaintiff, let alone lifting Plaintiff's hand up into his shoulder blade.

46.     Defendant TUMSER did not make any apparent effort to restrain Plaintiff's left arm or hand. This created the reasonable appearance that Defendant TUMSER did not actually consider Plaintiff to be a threat to himself or others, but instead was attempting to cause Plaintiff pain rather than restrain him for anyone's safety.

47.     Defendant TUMSER's decision to intentionally cause Plaintiff injury rather than restrain Plaintiff constituted a violation of Plaintiff's right to be free from unnecessary and unreasonable force under the Fourth Amendment.

48.     Defendant TUMSER eventually lowered Plaintiff's right hand to Plaintiff's lower back, but kept hold of the right hand, squeezing Plaintiff's fingers into each other in a manner that was reasonably calculated to cause pain. As he did so, Defendant TUMSER walked Plaintiff towards the back of the police vehicle.

49.     Even though Defendant TUMSER was causing Plaintiff noticeable pain, Plaintiff remained calm and even placed his left hand on his lower back without instruction or compulsion. Plaintiff intentionally did so to demonstrate to Defendant TUMSER and anyone else observing them that Plaintiff was not resisting or otherwise attempting to engage in a physical struggle with Defendant TUMSER. Plaintiff stated to Defendant TUMSER that he was hurting Plaintiff and asked Defendant TUMSER to "ease up" and to "chill, bro." Despite these good faith requests, Defendant TUMSER

1    continued to squeeze Plaintiff's fingers in a manner reasonably designed to inflict pain and which

2    lacked legal justification.

3    50.    Plaintiff understands and asserts herein that Defendant TUMSER continued squeezing the

4    fingers of his right hand into each other in a purposeful effort to cause sufficient pain such that

5    Plaintiff would struggle or otherwise pull away. Plaintiff reasonably understood that Defendant

6    TUMSER would use any resistance by Plaintiff as justification to escalate the encounter further and

7

8    use greater force against Plaintiff. For this reason, Plaintiff continued to intentionally not struggle

9    despite Defendant TUMSER continuing to painfully squeeze Plaintiff's fingers.

10   51.    Defendant OROSCO exited the vehicle and stood by Defendant TUMSER and Plaintiff.

11   52.    Around this time, several spectators began shouting questions at Defendants TUMSER and

12   OROSCO as they witnessed Defendant TUMSER's treatment of Plaintiff. These spectators included

13   both individuals that had participated in the carwash fundraiser as well as pedestrians who happened

14   to be nearby at the time. Some of the spectators began expressing concern for Plaintiff and why he

15   was being detained by Defendants. One or more of the spectators began filming Defendants and

16

17   Plaintiff using mobile devices.

18   53.    At some point, other members of the Los Angeles County Sheriff's Department arrived and

19   began walking around the vehicle that Defendant OROSCO parked in the street.

20

21   54.    At one point, Plaintiff's pet dog, an American Bulldog, tried to walk up to Plaintiff. Plaintiff

22   immediately acknowledged that was his dog and requested that another person take possession of the

23   animal. Plaintiff did so out of concern for the safety and wellbeing of the dog, as well as fear that

24   Defendants would immediately treat the animal as a threat and respond with force. A private citizen

25   promptly took custody of the animal and led it away from Defendants at Plaintiff's request.

26

27

28

55.     Plaintiff calmly but loudly stated over and over to Defendant TUMSER that his identification was in his wallet, which in turn was in Plaintiff's back pocket. This was captured on video recordings by one or more spectators.

56.     Defendant TUMSER pushed Plaintiff against the rear side quarter panel of the police vehicle and appeared to engage in a pat-down search of Plaintiff's person. During the pat-down search, Defendant TUMSER avoided or otherwise refused to acknowledge the existence of Plaintiff's wallet. At no point during the pat-down search did Defendant TUMSER remove Plaintiff's wallet, check his personal identification, or otherwise engage in any reasonable effort to verify Plaintiff's identity.

57.     Plaintiff continued to purposefully avoid any movement that could have been reasonably construed as resisting Defendant TUMSER, which was motivated by Plaintiff's reasonable fear that Defendant TUMSER would use any action by Plaintiff as an excuse to escalate his already violent and unjustified mistreatment of Plaintiff.

58.     During the course of the apparent pat-down search, Defendant TUMSER stated to Plaintiff, "Why do *you guys* act like you know the law?" At this point Defendant TUMSER – who appeared to be Caucasian – had already stopped Plaintiff based solely on Plaintiff's appearance and violently escalated the encounter when Plaintiff offered identification. Plaintiff therefore reasonably understood Defendant TUMSER's comment to be a reference to Plaintiff's ethnicity. Plaintiff also reasonably understood the comment to reflect Defendant TUMSER's apparent belief that it was inappropriate for Latino males such as Plaintiff to assert their understanding of constitutional rights in the presence of law enforcement, not matter how informally, even though the assertion of such rights is protected under the First Amendment.

59.     Defendant TUMSER continued to hold Plaintiff against the vehicle, while Plaintiff continued to acknowledge the existence and location of his personal identification.

60.     Defendant OROSCO took hold of Plaintiff's left arm and Plaintiff felt cuffs being applied to his wrists. In assisting in handcuffing Plaintiff, Defendant OROSCO was intentionally participating in the unlawful detention of Plaintiff that Defendant TUMSER had initiated.

61.     Defendants TUMSER and OROSCO pushed Plaintiff against the entryway of the rear door of the police vehicle, which was open. Plaintiff's head was too high up to clear the entryway and struck the doorframe as Defendants attempted to shove Plaintiff into the vehicle.

62.     Defendant TUMSER attempted to leverage Plaintiff's right arm to force Plaintiff down, which caused Plaintiff to feel a "pop" followed immediately by severe pain in his right shoulder, which in turn caused Plaintiff to scream aloud.

63.     Plaintiff turned towards Defendant TUMSER and stated, "You are hurting me."

64.     Defendants TUMSER and OROSCO responded by shoving Plaintiff towards the entryway of the back door of the police vehicle again. Plaintiff's legs struck the lower part of the door frame and Plaintiff's torso struck the lower left side of the door frame.

65.     Defendants TUMSER and OROSCO continued to grab Plaintiff and shove him against the door frame multiple times in a clumsy effort to heave Plaintiff into the back of the vehicle, which was also video recorded by one or more spectators.

66.     Defendants TUMSER and OROSCO lifted Plaintiff up and turned him around.

67.     Defendant TUMSER, now facing Plaintiff, ordered Plaintiff to get into the back of the police vehicle.

68.     Plaintiff, who was now in severe pain and had been injured due to Defendants repeatedly throwing Plaintiff's body against the police vehicle, responded by stating to Defendant TUMSER, "Why? You can run my name." This was, once again, a reference to Plaintiff's disclosure of identification and attempt to cooperate with a lawful investigation of his identity.

69.     Defendants TUMSER and OROSCO kicked Plaintiff in the back of both knees, causing his legs to buckle.

70.     Defendants TUMSER and OROSCO picked up Plaintiff and threw him into the back of the vehicle. However, they once again failed to clear the bottom of the door frame, which struck Plaintiff's lower back.

71.     Defendant TUMSER then started kneeing Plaintiff in the chest several times in apparent effort to force Plaintiff into the vehicle. Approximately the fourth time that Defendant TUMSER struck Plaintiff on the chest with his knee, Defendant TUMSER kept his knee against Plaintiff's chest while holding the top of the door frame for leverage, essentially pressing his full body weight on to Plaintiff's chest.

72.     Plaintiff complained that he was having trouble breathing due to Defendant TUMSER's decision to leverage his full body weight against Plaintiff's chest.

73.     Plaintiff began to lose consciousness and passed out, his head slumping forward.

74.     Plaintiff understands and asserts herein that, at some point after he lost consciousness, Defendant TUMSER released his knee from Plaintiff's chest, causing Plaintiff to fall down on the ground next to the police vehicle.

75.     Plaintiff understands and asserts herein that Defendant TUMSER, possibly with the assistance of Defendant OROSCO or others, placed Plaintiff fully in the back of the police vehicle. Plaintiff understands this occurred because Plaintiff regained consciousness inside the back of the police vehicle when Plaintiff's head struck the interior of the same.

76.     Defendant OROSCO entered the police vehicle and then turned around to face Plaintiff and asked that Plaintiff provide his name.

77.     Up to this point, Plaintiff reasonably understood that Defendants had no real interest in identifying Plaintiff as part of any good faith investigation. This understanding was based on the

specific actions of Defendants, including in particular but not necessarily limited to: (1) Defendant TUMSER showing no interest in confirming Plaintiff's identity by asking only if Plaintiff "had warrants" or was on probation at the outset of the detention; (2) Defendant TUMSER's immediate use of violent force when Plaintiff acknowledged that he possessed identification in his wallet while pointing towards his back pocket; (3) Defendants TUMSER and OROSCO ignoring Plaintiff's repeated subsequent statements that he had identification and encouraging Defendants to run the same; and (4) the refusal of Defendants TUMSER or OROSCO to take out Plaintiff's wallet or identification while Plaintiff was searched and held in handcuffs next to the police vehicle.

78.     Defendants' actions demonstrated a singular focus on violently escalating their encounter with Plaintiff in an apparent desire to physically hurt Plaintiff under cover of an investigatory detention, including in particular but not limited to: (1) Defendant TUMSER twisted Plaintiff's right arm behind his back, forcing Plaintiff's right hand up to Plaintiff's shoulder blades in response to Plaintiff gesturing towards the location of Plaintiff's wallet and identification; (2) Defendant TUMSER caused Plaintiff's head, torso, and legs to strike the door frame of the police vehicle when he violently shoved Plaintiff against the vehicle over and over; and (3) Defendant TUMSER pressed his knee into Plaintiff's chest while leveraging himself against the door frame, preventing Plaintiff from breathing normally and causing Plaintiff to pass out.

79.     Because the actions of Defendants showed that they were interested in violent escalation rather than identifying Plaintiff or otherwise conducting any legitimate investigation, and because Plaintiff was afraid of what further violence Defendants TUMSER and OROSCO may inflict on his person, Plaintiff responded by stating that his wallet and identification remained in his back pocket, but that he would not answer any questions from Defendants. In doing so, Plaintiff had invoked his right to refrain from answering questions from law enforcement as guaranteed under both the Fifth and Sixth Amendments to the United States Constitution.

80.     Defendant OROSCO then exited the vehicle and briefly opened the back door, removed Plaintiff's wallet, inspected Plaintiff's driver's license, and ran Plaintiff's name and date of birth through the California Law Enforcement Telecommunications System ("CLETS"), which confirmed that Plaintiff was not on probation or otherwise the subject of any warrant for arrest.

81.     Plaintiff, who was in severe pain and dazed from the loss of consciousness caused by Defendants, requested that Defendants TUMSER and OROSCO open the windows of the vehicle, stating "I need some air." Defendants declined to do so.

82.     Defendants TUMSER, OROSCO, and other members of the Los Angeles County Sheriff's Department ignored Plaintiff while they stood outside of the vehicle, talking amongst themselves. Plaintiff understands and alleges herein that Defendants were actively discussing how to proceed with an arrest of Plaintiff even though Plaintiff was not observed doing anything illegal and cooperated with Defendant TUMSER's instructions despite being racially profiled and the victim of excessive and unlawful force.

83.     Paramedics arrived at the scene, one of whom spoke briefly with Plaintiff while he remained handcuffed in the back of the police vehicle. When asked what happened, Plaintiff honestly described how he was injured by Defendants TUMSER and OROSCO to the best of his ability in his current state of distress. Before receiving any substantive medical treatment, though, the paramedic withdrew from the vehicle and began speaking with Defendants.

84.     Before Plaintiff received any substantive medical care from a paramedic, an unidentified deputy entered the driver's seat of the police vehicle and drove away with Plaintiff inside.

85.     Plaintiff was driven 3-4 blocks, arriving in an alleyway where multiple other members of the Los Angeles County Sheriff's Department were waiting with another police vehicle.

86.     These unidentified deputies physically removed Plaintiff from the first vehicle and placed him in the back of the second.

87.     Plaintiff, who had not been read his rights or otherwise told he had committed any crime, asked if he was being kidnapped. Several of the deputies laughed but did not acknowledge why Plaintiff was being shuffled between two police vehicles, where they were taking Plaintiff, or even if Plaintiff was in fact under arrest.

88.     Plaintiff was eventually transported to Martin Luther King Jr. Hospital, where he was escorted into the emergency room and handcuffed to a bed.

89.     A hospital staff member, who Plaintiff understood to be a medical doctor, approached Plaintiff, and asked what happened. Plaintiff responded that he was experiencing pain in his knee, back, and shoulder caused by deputies of the Los Angeles County Sheriff's Department.

90.     One or more of the deputies that escorted Plaintiff to the hospital started laughing and assured the doctor that that they didn't do anything to harm Plaintiff.

91.     Plaintiff pointed out that the deputies present at the hospital were not the same members of the Los Angeles County Sheriff's Department that used force on him, and that Plaintiff was handed off to other deputies after he was put in the back of the vehicle driven by Defendant OROSCO.

92.     Once the doctor advised that Plaintiff did not appear to have any broken bones, deputies immediately took Plaintiff to the Century Station of the Los Angeles County Sheriff's Department.

93.     During the booking process and in the presence of Plaintiff, the deputies that transported Plaintiff to and from the hospital expressed confusion as to what charges to assert against Plaintiff to justify his arrest.

94.     Eventually, one or more deputies called for a sergeant – identified herein as DOE 1 – and requested supervisory instruction regarding what charges to submit against Plaintiff.

95.     Defendant DOE 1 instructed the deputies to book Plaintiff for a single count of violating California Penal Code § 647(f).

96.     Plaintiff was thereafter booked for a single misdemeanor count of violating § 647(f).

97.     At some point concurrent with or subsequent to Plaintiff being booked into custody, Defendant TUMSER prepared a handwritten citation for a violation of § 647(f), which provided notice of a court hearing to answer for the alleged criminal violation on June 15, 2021 at the Los Angeles Metro Courthouse located at 1945 South Hill Street in Los Angeles. Plaintiff understands and asserts herein that Defendant TUMSER did so with the support, encouragement, acquiescence, or instruction of Defendant OROSCO, the supervising sergeant identified herein as Defendant DOE 1, and potentially other unknown members of the Los Angeles County Sheriff's Department.

98.     California Penal Code § 647(f) states that it is a misdemeanor to be "found in any public place under the influence of intoxicating liquor, any drug, [or] controlled substance … in a condition that they are unable to exercise care for their own safety or the safety of others […] or by reason of being under the influence […] interferes with or obstructs or prevents the free use of any street, sidewalk, or other public way." A criminal violation of this statute is often referred to as misdemeanor public intoxication.

99.     At no point did Defendant TUMSER, Defendant OROSCO, or any other member of the Los Angeles County Sheriff's Department observe any actions or behaviors by Plaintiff that would give rise to probable cause that Plaintiff was under the influence of alcohol or drugs, let alone so intoxicated that Plaintiff was unable to exercise care for his own safety or otherwise interfered with the free use of any portion of the street, sidewalk, or other public walkway.

100.    In fact, at the time of the interaction between Plaintiff and Defendant TUMSER, Plaintiff was not intoxicated or otherwise unable to care for his own safety, nor was Plaintiff interfering with the free use of the street or sidewalk. Plaintiff was simply packing up his supplies with the intention of leaving the carwash fundraiser and safely operating his vehicle to drive home.

101.   Plaintiff alleges herein that Defendants – including Defendants TUMSER, OROSCO, and DOE 1 in particular – invented a § 647(f) charge as an excuse to justify their violent detention and arrest of Plaintiff and cover up for their misconduct.

102.   Plaintiff was held in custody from approximately 5:00pm on February 13, 2021 until approximately 3:00am on February 14, 2021, at which point he was released.

103.   Because of the physical injuries sustained during the detention and arrest, Plaintiff experienced severe pain and difficulty performing work or basic daily tasks for the next several days, often struggling to physically get out of bed.

104.   On or about February 18, 2021, Plaintiff – with the assistance of a family member – visited another hospital closer to his residence, where medical staff recommended testing, evaluation, and imaging of his shoulder, neck, back, and knee to determine the scope of his injuries.

105.   Plaintiff has subsequently sought medical care related to the physical and psychological injuries sustained against him due to the misconduct of the Defendants.

106.   Prior to June 15, 2021, Plaintiff paid out of pocket to retain private counsel to defend him for the anticipated criminal charges arising from the incident, including but not limited to the citation for California Penal Code § 647(f) for which Defendant TUMSER issued a citation.

107.   On June 15, 2021, Plaintiff and his privately retained counsel appeared at the Los Angeles Metro Courthouse and inquired as to the existence of a criminal case brought against Plaintiff arising from the encounter with Defendants TUMSER and OROSCO on February 13, 2021.

108.   Plaintiff and his counsel were advised that no case had been filed against Plaintiff, but were unable to confirm whether Defendants failed to submit any charges for consideration to a prosecuting agency or if a prosecuting agency reviewed and rejected any such charges for insufficient evidence.

109.    On that basis, Plaintiff asserts herein that Defendants intentionally cited Plaintiff for a crime they knew was unsupported by any actual evidence of wrongdoing.

110.    Alternatively, Plaintiff asserts that Defendants cited Plaintiff with the knowledge and understanding that they would not actually submit any charges for filing consideration, instead abusing their positions as law enforcement officers to issue citations as a cover up for their own violent misconduct.

111.    The conduct of the Defendants as described herein represents a willful and conscious disregard for the constitutional rights of Plaintiffs and a purposeful effort to infringe on the same. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

## FIRST CAUSE OF ACTION
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### FIRST AMENDMENT RETALIATION
#### Against Defendants TUMSER, OROSCO, and DOES 1-25

112.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

113.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law and equal protection of the laws and under the First Amendment to be free from retaliation for exercise of their free speech rights were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

114.    As alleged elsewhere in this Complaint, Defendants TUMSER and OROSCO encountered Plaintiff at or near the intersection of East Florence Avenue and Makee Avenue while Plaintiff and was finishing his volunteer contribution to a carwash fundraiser. After observing Plaintiff unravel a pressure washer hose but without any reasonable suspicion of wrongdoing, Defendant TUMSER attempted to initiate an investigation of Plaintiff by asking Plaintiff "what are you doing?" Plaintiff calmly responded that he was unraveling a hose and continued to do so, but Defendant TUMSER refused to accept this and escalated the situation by demanding Plaintiff repeat himself and then accuse Plaintiff of having a problem, none of which constituted a legitimate investigation but instead appeared to be an attempt to racially profile Plaintiff, which is forbidden under California law. Plaintiff calmly responded that it appeared Defendant TUMSER had a problem, which was reasonable given that Defendant TUMSER was harassing Plaintiff without legal basis. This enraged Defendant TUMSER, who immediately leapt out of the vehicle, detained Plaintiff, and began using violent force when Plaintiff confirmed that he possessed identification.

115.    After the initial use of force and during a subsequent pat-down search of Plaintiff against the police vehicle, Defendant TUMSER mocked Plaintiff and made a thinly veiled comment about Latino males generally by asking, "Why do *you guys* act like you know the law?" This statement was a reference to Plaintiff's decision to repeatedly state the location of Plaintiff's identification and offer to show it to Defendants TUMSER and OROSCO, as well as Plaintiff's prior acknowledgement that Defendant TUMSER appeared to have a problem with Plaintiff based on his appearance alone.

116.    Plaintiff's decision to acknowledge his belief that Defendant TUMSER appeared to have a problem with Plaintiff constituted free speech protected under the First Amendment to the United States Constitution.

117.    Plaintiff's repeated statements to Defendants TUMSER and OROSCO that his identification was on his person and encouragement to run a check on Plaintiff's identity also constituted free speech protected under the First Amendment to the United States Constitution.

118.    Defendant TUMSER's decision to violently restrain Plaintiff by grabbing his right hand and forcing it up to Plaintiff's shoulder blades was substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

119.    Defendant TUMSER's decision to forcibly squeeze Plaintiff's fingers on his right hand to cause pain was also substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

120.    Defendant TUMSER's decision to forcibly slam Plaintiff against the police vehicle with intentional disregard for Plaintiff's safety – causing injuries to Plaintiff's head, shoulder, back, and knees – was substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

121.    Defendant TUMSER's decision to arrest Plaintiff was substantially motivated by Plaintiff's aforementioned statements and was in retaliation for the same.

122.    At all times material, Defendant OROSCO directly participated in or otherwise approved of and encouraged the actions of Defendant TUMSER, which were substantially motivated by and in direct response to Plaintiff's decision to exercise his right to speak freely under the First Amendment.

123.    The actions of Defendants as described herein would chill a person of ordinary firmness, and reasonably discourage others similarly situated from exercising their free speech rights in the presence of law enforcement officers.

124.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered economic damages in the form of medical costs incurred for treatment of their physical, psychological and emotional injuries, in amounts subject to proof at trial.

125.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to the physical injuries to their person, psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

126.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

127.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic rights and dignity of individuals under the jurisdiction of the United States, including Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**FOURTH AMENDMENT – UNLAWFUL SEARCH & SEIZURE**

**Against Defendants TUMSER, OROSCO, and DOES 1-25**

128.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

129.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from unlawful searches and seizures under the Fourth Amendment was in full force and effect, and the individual defendants

1   who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which

2   violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

3   130.    As set forth in more detail elsewhere in this Complaint, Defendants TUMSER and OROSCO

4
    observed Plaintiff packing up supplies used to participate in a carwash fundraiser at or near the
5

6   intersection of East Florence Avenue and Makee Avenue, but did not observe Plaintiff engaging in

7   any actions or behavior that would give rise to a reasonable suspicion that Plaintiff was committing a

8   crime. Despite lacking any such reasonable suspicion, Defendant TUMSER initiated an informal

9   investigation by demanding to know what Plaintiff was doing, then escalated the interaction by

10  demanding to know if Plaintiff "had a problem." When Plaintiff calmly pointed out that Defendant

11
    TUMSER appeared to have a problem given his obvious attempt to create a hostile conflict with
12

13  Plaintiff based solely on Plaintiff's appearance, Defendant TUMSER leapt from the vehicle and

14  demanded that Plaintiff put down the hose and "come here." In so doing, Defendant TUMSER

15  initiated an investigative detention without any reasonable suspicion that Plaintiff had committed

16  any crime.

17  131.    Defendant TUMSER proceeded with the unconstitutional investigative detention by asking

18  whether Plaintiff "had warrants" or was on probation. Plaintiff honestly denied both and referenced

19
    his identification in his wallet, located in Plaintiff's back pocket. Defendant TUMSER – who had no
20

21  apparent interest in identifying Plaintiff or otherwise conducting a lawful detention – forcibly

22  twisted Plaintiff's right hand up behind him until it reached Plaintiff's shoulder blades. Defendant

23  TUMSER then walked Plaintiff over to the police vehicle, patted down Plaintiff while studiously

24  avoiding Plaintiff's wallet and identification.

25  132.    Because Defendant TUMSER initiated the pat-down search outside of any lawful

26  investigative detention and did not have any reasonable suspicion that Plaintiff was armed or

27
    otherwise dangerous, the pat-down search was a separate violation of Plaintiff's rights under the
28

Fourth Amendment and the California Constitution. (Arizona v. Johnson, 555 U.S. 323, 326-27 (2009).)

133.    Defendant TUMSER's actions up to that point constituted at least two willful and purposeful violations of Plaintiff's right under the Fourth Amendment to be free from unlawful searches and seizures.

134.    Defendant OROSCO personally supervised, encouraged, and approved of Defendant TUMSER's conduct as the senior officer present during the investigative detention and search, and is therefore liable for his direct and supervisory participation in the same constitutional violations.

135.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which Plaintiff continues to seek treatment.

136.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

137.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs, and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

138.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

/ / /

/ / /

/ / /

/ / /

### THIRD CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

### FOURTH AMENDMENT – EXCESSIVE FORCE

### Against Defendants TUMSER, OROSCO, and DOES 1-25

139.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

140.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from excessive force under the Fourth Amendment were in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of their constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

141.    As set forth in more detail elsewhere in this Complaint, Defendant TUMSER racially profiled Plaintiff in violation of California law, then initiated an unconstitutional detention lacking reasonable suspicion of criminal activity. During the detention, Defendant TUMSER asked Plaintiff whether he "had warrants" or otherwise was on probation, which Plaintiff honestly denied. Plaintiff then tried to peacefully resolve the detention by acknowledging that he had valid identification in his wallet and gestured with his right hand out away from his body, pointing towards his back pocket.

142.    Defendant TUMSER, apparently still enraged by the perceived lack of deference and respect shown to him during an unconstitutional detention apparently based on racial animus, grabbed Plaintiff's right hand and twisted it behind Plaintiff and up to his shoulder blades, causing excruciating pain, then walked Plaintiff over to the police vehicle, while continuing to painfully

squeeze Plaintiff's fingers together. Plaintiff refused to physically react or pull away from Defendant TUMSER, only acknowledging that Defendant TUMSER was hurting him and asking that Defendant TUMSER stop. Defendant TUMSER did not have any legal justification for using such force, as Plaintiff complied with the unlawful detention and refused to struggle against Defendant TUMSER despite his illegal actions.

143.    Defendants TUMSER and OROSCO handcuffed Plaintiff and attempted to haphazardly force Plaintiff into the back of the police vehicle, slamming Plaintiff's head and part of his torso against the door frame multiple times. Defendant TUMSER then abruptly lifted Plaintiff's right arm from behind in an apparent attempt to leverage Plaintiff's head down. Defendant TUMSER did so instead of giving Plaintiff reasonable instructions or otherwise attempting a less violent approach to throwing Plaintiff into the back of the police vehicle. This caused Plaintiff to feel a "pop" in his right shoulder followed by additional severe pain. Defendants then kicked Plaintiff from behind his knees, causing Plaintiff's legs to buckle, before violently shoving Plaintiff into the door frame, causing Plaintiff's lower back to hit the bottom of the door frame.

144.    Defendant TUMSER – further enraged and embarrassed that he and Defendant OROSCO were observed by a growing crowd that was now filming their incompetent attempts at placing a compliant, handcuffed person into the back of a police vehicle – began kneeing Plaintiff in the chest while holding the top of the door frame as leverage. Defendant TUMSER ignored Plaintiff's complaint that he was struggling to breathe, stopping only after Plaintiff had passed out. Defendant TUMSER and OROSCO then shoved the now-unconscious Plaintiff into the vehicle.

145.    At all relevant times, Defendants TUMSER and OROSCO knew or should have known that the above-referenced use of violent force was not supported by any legal justification. Plaintiff remained calm and cooperative throughout his interactions with Defendants and did not give any indication that he posed a threat to himself, to Defendants, or to anyone else.

146.     Plaintiff asserts herein that Defendants TUMSER and OROSCO were not attempting to subdue Plaintiff due to non-compliance or any perceived danger, but instead were engaged in willful and purposeful use of force intended to punish Plaintiff for the perceived lack of respect.

147.     At no point prior to the use of force did Defendants encounter any specific articulable facts that would justify using force on Plaintiff, who was not engaged in any observable activity that could be construed as dangerous or otherwise justifying the use of force.

148.     Defendants' actions constitute willful and purposeful violation of Plaintiff's right to be free from excessive force under the Fourth Amendment.

149.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which Plaintiff continues to seek treatment.

150.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

151.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

152.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the treatment of private citizens under the law. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

/ / /

/ / /

/ / /

/ / /

/ / /

## FOURTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

## FOURTH AMENDMENT – UNLAWFUL ARREST

### Against Defendants TUMSER, OROSCO, and DOES 1-25

153.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

154.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to due process of law as well as the right to be free from warrantless arrests absent probable was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

155.    As described elsewhere in this pleading, Defendant TUMSER began questioning Plaintiff from a police vehicle based on nothing more than Plaintiff's appearance as a Latino male, escalated the encounter by demanding to know if Plaintiff "had a problem," and became enraged when Plaintiff responded that it appeared that Defendant TUMSER had a problem. Plaintiff leapt out of the vehicle and initiated an investigative detention without bothering to ask for Plaintiff's name, then began using violent force against Plaintiff when he acknowledged that he had identification on his person. As Plaintiff continued to acknowledge the location of his identification and encourage Defendant TUMSER to check the same, Defendants TUMSER and OROSCO made the decision to arrest Plaintiff and placed him in handcuffs. Defendants TUMSER and OROSCO violently forced

Plaintiff against the door frame of the police vehicle, repeatedly striking Plaintiff's head, torso, and legs against the frame. Defendant TUMSER lifted Plaintiff's handcuffed hands up and away from Plaintiff's body in an apparent effort to force Plaintiff's head down, causing further injury. When Plaintiff finally reacted in pain and told Defendant TUMSER he was hurting him, Defendants TUMSER and OROSCO kicked Plaintiff's knees out from under him and slammed Plaintiff's lower back into the bottom of the door frame. Defendant TUMSER then used the door frame as leverage to knee Plaintiff in the chest, which disrupted Plaintiff's breathing and caused him to lose consciousness.

156.    Thereafter, Defendants arranged for Plaintiff to be taken to an alleyway location a few blocks away, placed Plaintiff in another police vehicle, and eventually booked Plaintiff into custody at the Century Station even though the deputies transporting and booking Plaintiff were unable to articulate any crime that Plaintiff had allegedly committed.

157.    Defendants – including but not necessarily limited to Defendants TUMSER, OROSCO, and DOE 1 – conspired and agreed to assert that Plaintiff had violated California Penal Code § 647(f) despite no member of the Los Angeles County Sheriff's Department observing anything that would give rise to a probable cause finding that Plaintiff posed a safety risk to himself or others or otherwise improperly obstructed a public area due to intoxication.

158.    Plaintiff asserts herein that Defendants charged him with public intoxication under § 647(f) as a pretext to justify the extended detention, handcuffing, and extensive use of force perpetrated by Defendants as described herein.

159.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

160.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

161.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, he is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

162.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the civil rights of Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**FOURTH AMENDMENT – RACIAL DISCRIMINATION**

**Against Defendant TUMSER**

163.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

164.    At the time of the incidents as set forth in the averments above, the rights of persons within the jurisdiction of the United States of America under the Fourteenth Amendment to the United States Constitution to equal protection and due process of law as well as the right to be free from racially discriminatory treatment under the law was in full force and effect, and the individual defendants who engaged in conduct, as set forth above, deprived Plaintiff of his constitutional rights, which violated those rights, and violated the Fourteenth Amendment to the United States Constitution.

COMPLAINT FOR DAMAGES

33

165.    As alleged in more detail elsewhere in this Complaint, Defendant TUMSER observed Plaintiff putting away a pressure washer hose adjacent to his mobile car wash vehicle at the location of a public carwash fundraiser that had been going for several hours. Plaintiff was not engaged in any illegal activity at the time, nor would any reasonable officer observing Plaintiff have a reasonable suspicion that Plaintiff was engaged in criminal conduct. Because Plaintiff presents as a dark-skinned Latino male, Defendant TUMSER demanded that Plaintiff explain what he was doing. When Plaintiff honestly acknowledged that he was unraveling a hose, Defendant TUMSER demanded that Plaintiff repeat himself then demanded to know if Plaintiff had a problem. Plaintiff confirmed he did not but acknowledged his reasonable belief that Defendant TUMSER did given the nature of the interaction up to that point. Defendant TUMSER became enraged, leapt out of the vehicle, and ordered Plaintiff to put down the hose and "come here," which constituted a detention of Plaintiff.

166.    Defendant TUMSER demanded to know if Plaintiff "had warrants" or was on probation but did not bother to ask Plaintiff for his name or identification. Plaintiff honestly denied that he was on probation or the subject of an active warrant, then pointed out the location of his identification in a good faith effort to resolve the detention. Defendant TUMSER responded by violently restraining Plaintiff without legal justification.

167.    Plaintiff intentionally refused to struggle or otherwise create the appearance of resisting Defendant TUMSER's illegal use of force, instead declaring aloud repeatedly to Defendants TUMSER and OROSCO that his identification remained in his wallet located in his back pocket.

168.    Defendant TUMSER conducted a pat-down search with Plaintiff pressed against the police vehicle but did not bother to locate or retrieve the wallet or identification. While doing so, Defendant TUMSER further revealed his racially animus by stating to Plaintiff, "Why do *you guys* act like you know the law?" This statement was an obvious attempt to mock Plaintiff and by extension his

ethnic/racial identity for daring to act with anything other than subservience in the presence of Defendant TUMSER, a white law enforcement officer. Thereafter, Defendants engaged in additional violence against Plaintiff's person before arresting him.

169.    Defendant TUMSER's actions, as set forth herein, were primarily motivated by his racial animus against Plaintiff due to Plaintiff's appearance and identity as a Latino male. But for Defendant TUMSER's racial animus against Plaintiff, Defendant TUMSER would not have questioned Plaintiff, would not have asked if Plaintiff had a problem, and would not have detained Plaintiff without legal basis.

170.    But for Defendant TUMSER's racial animus against Plaintiff, Defendant TUMSER would not have mocked Plaintiff and Latinos in general while conducting a pat-down search by condescendingly asking, "Why do *you guys* act like you know the law?"

171.    The actions of Defendant TUMSER violated Plaintiff's rights under the 14th Amendment to equal treatment under the law.

172.    The actions of Defendant TUMSER violated Plaintiff's rights under 42 U.S.C. § 1981, which holds that all persons within the jurisdiction of the United States are entitled to the full and equal benefit of the laws that are enjoyed by white citizens, and which forbids intentional discrimination on account of race. (See 42 U.S.C. § 1981(a); see also Evans v. McKay, 869 F.2d 1341, 1343 (9th Cir. 1989); accord, Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1986).)

173.    As a direct and proximate result of Defendant TUMSER's actions, Plaintiff has suffered general damages due to physical injuries, psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

174.    As a direct and proximate result of Defendant TUMSER's actions, Plaintiff asserts economic damages that have been incurred and will continue to be incurred in the future with respect reasonably necessary medical treatment for the injuries suffered due to Defendants' actions.

175.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to 42 U.S.C. § 1988 and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

176.    The conduct of Defendant TUMSER as described herein represented a willful and conscious disregard for the civil rights of Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against Defendant TUMSER according to proof.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 – *Monell*/Municipal Liability

### Against Defendant COUNTY OF LOS ANGELES

177.    Plaintiff hereby incorporates the preceding paragraphs as though fully set forth herein.

178.    Defendant COLA, by and through the individual policymakers and/or supervisory officials for the Los Angeles County Sheriff's Department, improperly, inadequately, or with deliberate indifference and/or reckless disregard for constitutional rights of persons, failed to properly train, supervise, retrain, monitor, or take corrective action with respect to individual employees under their supervision and control, including in particular but not necessarily limited to Defendants TUMSER, OROSCO, DOES 1-25, and others with respect to the types of wrongful conduct alleged in this complaint, including, but not limited to the failure to enforce the law of the State of California, the unconstitutional enforcement of local ordinances and statutes, the enforcement of unconstitutional ordinances and statutes, and misuse of actual or perceived authority against individuals such as Plaintiff such that each one of them is liable legally for all injuries and/or damages sustained by Plaintiff pursuant to the legal principles set forth in Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658 (1978), Heller v. Bushey, 759 F.2d 1371 (9th Cir. 1986), cert. granted and

reversed on other grounds sub nom. City of Los Angeles v. Heller, 106 S.Ct. 1573 (1986), and Larez v. Gates, 946 F.2d 630 (9th Cir. 1991), the content of all of which is incorporated herein by this reference.

179.     The following policies, customs, and practices of Defendant COLA were in effect at the time of the incidents described herein, which had the natural and foreseeable result of violating Plaintiff's established constitutional rights:

> a.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who engage in excessive force without legal justification in violation of the Fourth Amendment;
>
> b.   Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who engaged in retaliation or otherwise refused to recognize the legal right of citizens to exercise their right to free speech under the First Amendment;
>
> c.    Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who detain private citizens without reasonable suspicion of criminal wrongdoing in violation of the Fourth Amendment;
>
> d. Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who detain private citizens based on perceived lack of cooperation or disrespect in violation of the Fourth Amendment; and
>
> e. Allowing, encouraging, or otherwise refusing to punish members of the Los Angeles County Sheriff's Department who detain and question individuals in a harassing and intimidating manner solely due to their actual or perceived ethnicity – i.e., engaging in

1          racial profiling unsupported by any articulable finding of reasonable suspicion to

2             otherwise justify an investigatory detention based on race.

3

4    180.    Defendant COLA, by and through the Los Angeles County Sheriff's Department, owed a

5   duty to Plaintiff and others at all times to establish, implement, and follow policies, procedures,

6   customs, and/or practices which confirm and provide for the protections guaranteed them under the

7   United States Constitution, including the First, Fourth, and Fourteenth Amendments, as well as

8   related federal law; to use reasonable care to select, supervise, train, control, and review the actions

9   of all of their agents, officers, and employees; and to ensure that its members engaged in the

10   performance of their duties in conformity with the laws of the United States.

11

12   181.    Instead, Defendants engaged in the above-described policies, practices, and customs, all of

13   which is not unique to Plaintiffs alone or constitutes an isolated incident, but is in fact a pervasive

14   policy, practice, and custom of which Defendant COLA, by and through its various supervisors and

15   policymakers, are aware and either expressly maintain or otherwise tacitly support through inaction.

16   182.    The injuries suffered by Plaintiff as described herein were directly, proximately, and

17

18   foreseeably caused in part by the unconstitutional practices, policies, or customs, both written and

19   unwritten, that at all relevant times were in full force and effect by Defendants and their employees,

20   which were put in place or otherwise allowed to remain in place due to the tacit agreement of

21   Defendants, various supervisors, managers, and policymakers, and was further exacerbated by their

22   refusal to properly investigate such misconduct of other individuals under their supervision and

23   authority, or discipline the same.

24

25   183.    Defendant COLA, by and through its various supervisors and policymakers, knew, or should

26   have known, that by breaching the aforesaid duties and obligations that it was foreseeable that it

27   would cause Plaintiff and others to suffer constitutional injury and be damaged by the wrongful acts

28

and omissions as alleged herein, that such breaches occurred in contravention of public policy and as to their respective legal duties and obligations to individuals within their jurisdiction.

184.    The aforementioned policies, practices, customs, and procedures, as well as the lack of adequate training and discipline as stated and shown above, were the moving force and/or substantial factor in bringing about the constitutional deprivations complained of by Plaintiff herein.

**SEVENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – SUPPRESSION OF FREE SPEECH**

**As to Defendants TUMSER, OROSCO, COUNTY OF LOS ANGELES, and DOES 1-25**

185.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

186.    The California Constitution, Article I, § 2 provides: "Every person may freely speak, write, and publish his or her sentiments on all subjects …" and has been interpreted to be consistent with the protections afforded under the First Amendment to the United States Constitution with respect to freedom of speech and freedom from retaliation for exercising the right to speak.

187.    Plaintiff, at all times material, was a person legally entitled to the right to freely speak under the First Amendment to the United States Constitution as well as Article I, § 2 of the California Constitution, both of which include the right of a private citizen to speak freely and honestly when being questioned by a police officer prior to being detained.

188.    California Civil Code § 52.1 – referred to as the "Tom Bane Civil Rights Act" – allows any individual to bring a civil claim against a government actor who has interfered with or attempted to interfere with the exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of the State of California.

189.    As alleged elsewhere in this Complaint, Defendants TUMSER and OROSCO encountered Plaintiff at or near the intersection of East Florence Avenue and Makee Avenue while Plaintiff and

1  was finishing his volunteer contribution to a carwash fundraiser. After observing Plaintiff unravel a
2  pressure washer hose but without any reasonable suspicion of wrongdoing, Defendant TUMSER
3  attempted to initiate an investigation of Plaintiff by asking Plaintiff "what are you doing?" Plaintiff
4  calmly responded that he was unraveling a hose and continued to do so, but Defendant TUMSER
5  refused to accept this and escalated the situation by demanding Plaintiff repeat himself and then
6
7  accuse Plaintiff of having a problem, none of which constituted a legitimate investigation but instead
8  appeared to be an attempt to racially profile Plaintiff, which is forbidden under California law.
9  Plaintiff calmly responded that it appeared Defendant TUMSER had a problem, which was
10  reasonable given that Defendant TUMSER was harassing Plaintiff without legal basis. This enraged
11
12  Defendant TUMSER, who immediately leapt out of the vehicle, detained Plaintiff, and began using
13  violent force when Plaintiff confirmed that he possessed identification.

14  190.    After the initial use of force and during a subsequent pat-down search of Plaintiff against the
15  police vehicle, Defendant TUMSER mocked Plaintiff and made a thinly veiled comment about
16  Latino males generally by asking, "Why do *you guys* act like you know the law?" This statement
17  was a reference to Plaintiff's decision to repeatedly state the location of Plaintiff's identification and
18  offer to show it to Defendants TUMSER and OROSCO, as well as Plaintiff's prior
19
20  acknowledgement that Defendant TUMSER appeared to have a problem with Plaintiff based on his
21  appearance alone.

22  191.    Plaintiff's decision to acknowledge his belief that Defendant TUMSER appeared to have a
23  problem with Plaintiff constituted free speech protected under the First Amendment to the United
24  States Constitution.

25  192.    Plaintiff's repeated statements to Defendants TUMSER and OROSCO that his identification
26  was on his person and encouragement to run a check on Plaintiff's identity also constituted free
27
28  speech protected under the First Amendment to the United States Constitution.

193. Defendant TUMSER's decision to violently restrain Plaintiff by grabbing his right hand and forcing it up to Plaintiff's shoulder blades was substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

194. Defendant TUMSER's decision to forcibly squeeze Plaintiff's fingers on his right hand to cause pain was also substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

195. Defendant TUMSER's decision to forcibly slam Plaintiff against the police vehicle with intentional disregard for Plaintiff's safety – causing injuries to Plaintiff's head, shoulder, back, and knees – was substantially motivated by Plaintiff's aforementioned statements and constituted retaliation for the same.

196. Defendant TUMSER's decision to arrest Plaintiff was substantially motivated by Plaintiff's aforementioned statements and was in retaliation for the same.

197. At all times material, Defendant OROSCO directly participated in or otherwise approved of and encouraged the actions of Defendant TUMSER, which were substantially motivated by and in direct response to Plaintiff's decision to exercise his right to speak freely under the First Amendment.

198. The actions of Defendants as described herein would chill a person of ordinary firmness, and reasonably discourage others similarly situated from exercising their free speech rights in the presence of law enforcement officers for fear of retaliatory detention and violent force.

199. The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

200. As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which they continue to seek treatment.

201. As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that will be reasonably incurred in obtaining medical treatment needed as a result of the actions of Defendants in causing injury to Plaintiff.

202. Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

203. The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private citizens within the jurisdiction of the City of San Bernardino, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

204. Defendants performed the aforementioned wrongful acts in the course and scope of their employment with the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior,* and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL SEARCH & SEIZURE**

**Against Defendants TUMSER, OROSCO, COUNTY OF LOS ANGELES, and DOES 1-25**

205.     Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

206.     The California Constitution, Article I, § 13 contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause.

207.     Plaintiff, at all times material, is a person who was legally entitled to the right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution.

208.     As set forth in more detail elsewhere in this Complaint, Defendants TUMSER and OROSCO observed Plaintiff packing up supplies used to participate in a carwash fundraiser at or near the intersection of East Florence Avenue and Makee Avenue, but did not observe Plaintiff engaging in any actions or behavior that would give rise to a reasonable suspicion that Plaintiff was committing a crime. Despite lacking any such reasonable suspicion, Defendant TUMSER initiated an informal investigation by demanding to know what Plaintiff was doing, then escalated the interaction by demanding to know if Plaintiff "had a problem." When Plaintiff calmly pointed out that Defendant TUMSER appeared to have a problem given his obvious attempt to create a hostile conflict with Plaintiff based solely on Plaintiff's appearance, Defendant TUMSER leapt from the vehicle and demanded that Plaintiff put down the hose and "come here." In so doing, Defendant TUMSER initiated an investigative detention without any reasonable suspicion that Plaintiff had committed any crime.

209.    Defendant TUMSER proceeded with the unconstitutional investigative detention by asking whether Plaintiff "had warrants" or was on probation. Plaintiff honestly denied both and referenced his identification in his wallet, located in Plaintiff's back pocket. Defendant TUMSER – who had no apparent interest in identifying Plaintiff or otherwise conducting a lawful detention – forcibly twisted Plaintiff's right hand up behind him until it reached Plaintiff's shoulder blades. Defendant TUMSER then walked Plaintiff over to the police vehicle, patted down Plaintiff while studiously avoiding Plaintiff's wallet and identification.

210.    Because Defendant TUMSER initiated the pat-down search outside of any lawful investigative detention and did not have any reasonable suspicion that Plaintiff was armed or otherwise dangerous, the pat-down search was a separate violation of Plaintiff's rights under the Fourth Amendment and the California Constitution. (Arizona v. Johnson, 555 U.S. 323, 326-27 (2009).)

211.    Defendant TUMSER's actions therefore constitute multiple willful and purposeful violations of Plaintiff's right under the Fourth Amendment right to be free from unlawful searches and seizures, as well as Plaintiff's corresponding rights under Article I, § 13 of the California Constitution.

212.    Defendant OROSCO supervised, encouraged, and approved of Defendant TUMSER's conduct as the senior officer present during the investigative detention and search, and therefore is liable for his direct and supervisory participation in the same constitutional violations.

213.    The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

214.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

215.   Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

216.   The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

217.   Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

## NINTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – UNLAWFUL USE OF FORCE

### As to Defendants TUMSER, OROSCO, COUNTY OF LOS ANGELES, and DOES 1-25

218.   Plaintiff re-alleges, adopt and incorporates the preceding paragraphs as if fully set forth herein.

219.   The California Constitution, Article I, § 13 contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the

1  protections afforded under the Fourth Amendment to the United States Constitution with respect to

2  freedom from unlawful and excessive force.

3  220.     At all times material, Plaintiff was legally entitled to the right to be free from unlawful and

4  excessive force under the Fourth Amendment to the United States Constitution as well as Article I, §

5  13 of the California Constitution, both of which include the right of a private citizen not to be

6

7  subjected to excessive force by a law enforcement officer without legal justification.

8  221.     As set forth in more detail elsewhere in this Complaint, Defendant TUMSER racially

9  profiled Plaintiff in violation of California law, then initiated an unconstitutional detention lacking

10  reasonable suspicion of criminal activity. During the detention, Defendant TUMSER asked Plaintiff

11  whether he "had warrants" or otherwise was on probation, which Plaintiff honestly denied. Plaintiff

12  then tried to peacefully resolve the detention by acknowledging that he had valid identification in his

13  wallet and gestured with his right hand out away from his body, pointing towards his back pocket.

14

15  222.     Defendant TUMSER, apparently still enraged by the perceived lack of deference and respect

16  shown to him during an unconstitutional detention apparently based on racial animus, grabbed

17  Plaintiff's right hand and twisted it behind Plaintiff and up to his shoulder blades, causing

18  excruciating pain, then walked Plaintiff over to the police vehicle, while continuing to painfully

19  squeeze Plaintiff's fingers together. Plaintiff refused to physically react or pull away from Defendant

20  TUMSER, only acknowledging that Defendant TUMSER was hurting him and asking that

21

22  Defendant TUMSER stop. Defendant TUMSER did not have any legal justification for using such

23  force, as Plaintiff complied with the unlawful detention and refused to struggle against Defendant

24  TUMSER despite his illegal actions.

25  223.     Defendants TUMSER and OROSCO handcuffed Plaintiff and attempted to haphazardly force

26  Plaintiff into the back of the police vehicle, slamming Plaintiff's head and part of his torso against

27  the door frame multiple times. Defendant TUMSER then abruptly lifted Plaintiff's right arm from

28

behind in an apparent attempt to leverage Plaintiff's head down. Defendant TUMSER did so instead of giving Plaintiff reasonable instructions or otherwise attempting a less violent approach to throwing Plaintiff into the back of the police vehicle. This caused Plaintiff to feel a "pop" in his right shoulder followed by additional severe pain. Defendants then kicked Plaintiff from behind his knees, causing Plaintiff's legs to buckle, before violently shoving Plaintiff into the door frame, causing Plaintiff's lower back to hit the bottom of the door frame.

224.     Defendant TUMSER – further enraged and embarrassed that he and Defendant OROSCO were observed by a growing crowd that was now filming their incompetent attempts at placing a compliant, handcuffed person into the back of a police vehicle – began kneeing Plaintiff in the chest while holding the top of the door frame as leverage. Defendant TUMSER ignored Plaintiff's complaint that he was struggling to breathe, stopping only after Plaintiff had passed out. Defendant TUMSER and OROSCO then shoved the now-unconscious Plaintiff into the vehicle.

225.     At all relevant times, Defendants TUMSER and OROSCO knew or should have known that the above-referenced use of violent force was not supported by any legal justification. Plaintiff remained calm and cooperative throughout his interactions with Defendants and did not give any indication that he posed a threat to himself, to Defendants, or to anyone else.

226.     Plaintiff asserts herein that Defendants TUMSER and OROSCO were not attempting to subdue Plaintiff due to non-compliance or any perceived danger, but instead were engaged in willful and purposeful use of force intended to punish Plaintiff for the perceived lack of respect.

227.     At no point prior to the use of force did Defendants encounter any specific articulable facts that would justify using force on Plaintiff, who was not engaged in any observable activity that could be construed as dangerous or otherwise justifying the use of force.

228.     The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently

1    intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San*

2    *Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

3    229.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general

4    damages due to psychological harm, emotional distress, and pain and suffering, for which they

5

6    continue to seek treatment.

7    230.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages

8    that have been incurred and will reasonably be incurred into the future with respect to medical

9    treatment needed as a result of the actions of Defendants.

10   231.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and

11   expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek

12   such reasonable fees and costs in amounts subject to proof at the time of trial.

13

14   232.    The conduct of the Defendants as described herein represented a willful and conscious

15   disregard for the basic care and treatment of private individuals, including but not necessarily limited

16   to Plaintiffs. Defendants' actions shock the conscience of the average person and constitute an abuse

17   of power that was malicious and purposeful such that punitive damages are allowed under the law.

18   Punitive damages are therefore sought against the Defendants according to proof.

19

20   233.    Defendants performed the aforementioned wrongful acts in the course and scope of their

21   employment as law enforcement officers employed by the Los Angeles County Sheriff's

22   Department. Pursuant to California Government Code § 815.2, the common law doctrine of

23   *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously

24   liable for the misconduct of Defendants as described herein.

25   / / /

26   / / /

27   / / /

28

**TENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – FALSE ARREST**

**Against Defendants TUMSER, OROSCO, COUNTY OF LOS ANGELES, and DOES 1-25**

234.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

235.    The California Constitution, Article I, § 13 contains identical text to the Fourth Amendment to the United States Constitution and has been interpreted to be consistent with the protections afforded under the Fourth Amendment to the United States Constitution with respect to freedom from searches and seizures unsupported by either a warrant or probable cause, including in particular seizure by way of arrest.

236.    Plaintiff, at all times material, was legally entitled to the right to be free from unlawful searches and seizures under the Fourth Amendment to the United States Constitution as well as Article I, § 13 of the California Constitution, both of which include the right of a private citizen not to be subjected to unlawful arrest unsupported by probable cause or a valid warrant.

237.    As described elsewhere in this pleading, Defendant TUMSER began questioning Plaintiff from a police vehicle based on nothing more than Plaintiff's appearance as a Latino male, escalated the encounter by demanding to know if Plaintiff "had a problem," and became enraged when Plaintiff responded that it appeared that Defendant TUMSER had a problem. Plaintiff leapt out of the vehicle and initiated an investigative detention without bothering to ask for Plaintiff's name, then began using violent force against Plaintiff when he acknowledged that he had identification on his person. As Plaintiff continued to acknowledge the location of his identification and encourage Defendant TUMSER to check the same, Defendants TUMSER and OROSCO made the decision to arrest Plaintiff and placed him in handcuffs. Defendants TUMSER and OROSCO violently forced Plaintiff against the door frame of the police vehicle, repeatedly striking Plaintiff's head, torso, and

legs against the frame. Defendant TUMSER lifted Plaintiff's handcuffed hands up and away from Plaintiff's body in an apparent effort to force Plaintiff's head down, causing further injury. When Plaintiff finally reacted in pain and told Defendant TUMSER he was hurting him, Defendants TUMSER and OROSCO kicked Plaintiff's knees out from under him and slammed Plaintiff's lower back into the bottom of the door frame. Defendant TUMSER then used the door frame as leverage to knee Plaintiff in the chest, which disrupted Plaintiff's breathing and caused him to lose consciousness.

238.    Thereafter, Defendants arranged for Plaintiff to be taken to an alleyway location a few blocks away, placed Plaintiff in another police vehicle, and eventually booked Plaintiff into custody at the Century Station even though the deputies transporting and booking Plaintiff were unable to articulate any crime that Plaintiff had allegedly committed.

239.    Defendants – including but not necessarily limited to Defendants TUMSER, OROSCO, and DOE 1 – conspired and agreed to assert that Plaintiff had violated California Penal Code § 647(f) despite no member of the Los Angeles County Sheriff's Department observing anything that would give rise to a probable cause finding that Plaintiff posed a safety risk to himself or others or otherwise improperly obstructed a public area due to intoxication.

240.    Plaintiff asserts herein that Defendants charged him with public intoxication under § 647(f) as a pretext to justify the extended detention, handcuffing, and extensive use of force perpetrated by Defendants as described herein.

241.    The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

242.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

243.    As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages that have been incurred and will reasonably be incurred into the future with respect to medical treatment needed as a result of the actions of Defendants.

244.    Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

245.    The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

246.    Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

# ELEVENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CIVIL CODE § 52.1 – RACIAL DISCRIMINATION/PROFILING

### Against Defendants TUMSER, OROSCO, COUNTY OF LOS ANGELES, and DOES 1-25

247.    Plaintiff re-alleges, adopts and incorporates the preceding paragraphs as if fully set forth herein.

248.    The California Constitution, Article I, § 7 holds that a person may not be deprived of equal protection of the laws, with express language finding that the section shall track the scope of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

249.    California Penal Code § 13519.4 is a provision relating to the Commission on Peace Officer Standards and Training (set forth in Cal. Pen. Code § 13500, *et seq*.), and specifically holds that racial profiling "presents a great danger to the fundamental principles of [the California] Constitution and a democratic society." The California Legislature considers racial profiling to be "abhorrent and cannot be tolerated." Police officers in California "shall not engage in racial or identity profiling." (See Cal. Pen. Code § 13519.4(d)-(f).)

250.    Plaintiff, at all times material, was legally entitled to the right to be free from unlawful racial discrimination by law enforcement officers in California, including in particular by way of suspicion-less detention, searches, or arrest based solely on his appearance as a member of an ethnic and/or racial group.

251.    As alleged in more detail elsewhere in this Complaint, Defendant TUMSER observed Plaintiff putting away a pressure washer hose adjacent to his mobile car wash vehicle at the location of a public carwash fundraiser that had been going for several hours. Plaintiff was not engaged in any illegal activity at the time, nor would any reasonable officer observing Plaintiff have a reasonable suspicion that Plaintiff was engaged in criminal conduct. Because Plaintiff presents as a dark-skinned Latino male, Defendant TUMSER demanded that Plaintiff explain what he was doing.

1   When Plaintiff honestly acknowledged that he was unraveling a hose, Defendant TUMSER

2   demanded that Plaintiff repeat himself then demanded to know if Plaintiff had a problem. Plaintiff

3   confirmed he did not but acknowledged his reasonable belief that Defendant TUMSER did given the

4   nature of the interaction up to that point. Defendant TUMSER became enraged, leapt out of the

5   vehicle, and ordered Plaintiff to put down the hose and "come here," which constituted a detention

6   of Plaintiff.

7

8   252.   Defendant TUMSER demanded to know if Plaintiff "had warrants" or was on probation but

9   did not bother to ask Plaintiff for his name or identification. Plaintiff honestly denied that he was on

10   probation or the subject of an active warrant, then pointed out the location of his identification in a

11   good faith effort to resolve the detention. Defendant TUMSER responded by violently restraining

12   Plaintiff without legal justification.

13

14   253.   Plaintiff intentionally refused to struggle or otherwise create the appearance of resisting

15   Defendant TUMSER's illegal use of force, instead declaring aloud repeatedly to Defendants

16   TUMSER and OROSCO that his identification remained in his wallet located in his back pocket.

17   254.   Defendant TUMSER conducted a pat-down search with Plaintiff pressed against the police

18   vehicle but did not bother to locate or retrieve the wallet or identification. While doing so, Defendant

19   TUMSER further revealed his racially animus by stating to Plaintiff, "Why do *you guys* act like you

20   know the law?" This statement was an obvious attempt to mock Plaintiff and by extension his

21   ethnic/racial identity for daring to act with anything other than subservience in the presence of

22   Defendant TUMSER, a white law enforcement officer. Thereafter, Defendants engaged in additional

23   violence against Plaintiff's person before arresting him.

24

25   255.   Defendant TUMSER's actions, as set forth herein, were primarily motivated by his racial

26   animus against Plaintiff due to Plaintiff's appearance and identity as a Latino male. But for

27   Defendant TUMSER's racial animus against Plaintiff, Defendant TUMSER would not have

28

questioned Plaintiff, would not have asked if Plaintiff had a problem, and would not have detained Plaintiff without legal basis.

256.     But for Defendant TUMSER's racial animus against Plaintiff, Defendant TUMSER would not have mocked Plaintiff and Latinos in general while conducting a pat-down search by condescendingly asking, "Why do *you guys* act like you know the law?"

257.     The actions of Defendant TUMSER violated Plaintiff's rights under the 14th Amendment to equal treatment under the law.

258.     The actions of Defendant TUMSER violated Plaintiff's rights under 42 U.S.C. § 1981, which holds that all persons within the jurisdiction of the United States are entitled to the full and equal benefit of the laws that are enjoyed by white citizens, and which forbids intentional discrimination on account of race. (See 42 U.S.C. § 1981(a); see also Evans v. McKay, 869 F.2d 1341, 1343 (9th Cir. 1989); accord, Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1986).)

259.     The actions of Defendants constitute violations of California Civil Code § 52.1 because the conduct alleged constitutes an intentional violation of protected rights that are inherently intimidating and coercive by virtue of the violations themselves. (See *Cornell v. City of San Francisco* (2017) 17 Cal.App.5th 766, 801-802.)

260.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered general damages due to psychological harm, emotional distress, and pain and suffering, for which he continues to seek treatment.

261.     As a direct and proximate result of Defendants' actions, Plaintiff asserts economic damages in the form of reasonably necessary costs for medical care that Plaintiff has incurred and will continue to incur has he continues with treatment.

262.     Plaintiff has incurred, and will continue to incur, reasonable attorney's fees, costs and expenses. Pursuant to California Civil Code § 52.1(i) and related statutes, Plaintiff is entitled to seek such reasonable fees and costs in amounts subject to proof at the time of trial.

263.     The conduct of the Defendants as described herein represented a willful and conscious disregard for the basic care and treatment of private individuals, including but not necessarily limited to Plaintiff. Defendants' actions shock the conscience of the average person and constitute an abuse of power that was malicious and purposeful such that punitive damages are allowed under the law. Punitive damages are therefore sought against the Defendants according to proof.

264.     Defendants performed the aforementioned wrongful acts in the course and scope of their employment as law enforcement officers employed by the Los Angeles County Sheriff's Department. Pursuant to California Government Code § 815.2, the common law doctrine of *Respondeat Superior*, and related case law, Defendant COUNTY OF LOS ANGELES is vicariously liable for the misconduct of Defendants as described herein.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays and seek the following relief as to the Causes of Action stated above:

1. For economic damages according to proof at trial, including in particular costs associated with medical and/or psychological treatment;

2. For general damages according to proof at trial, including pain, suffering, and loss of enjoyment of life;

3. For punitive damages according to proof at trial, to the extent authorized or otherwise allowed by law;

4. For reasonable attorney's fees and costs, pursuant to statute; and

4. For such other relief as the Court deems proper and just.


Date: August 5, 2021                BY:     _____
                                                    Daniel C. Sharpe, Esq.


## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all causes of action asserted herein.


Date: August 5, 2021                BY:     _____
                                                    Daniel C. Sharpe, Esq.

Electronically FILED by Superior Court of California, County of Los Angeles on 08/12/2021 04:54 PM David W. Slayton, Executive Officer/Clerk of Court, by C. Castillo, Deputy Clerk

Case 2:21-cv-06909-JFW-PD Document 1-1 Filed 08/12/21 Page 59 of 87 Page ID #:64
21STCV29101

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Daniel C. Sharpe, Esq. (SBN: 267075)<br>**Windsor Troy**<br>3701 Wilshire Blvd., Suite 1111, Los Angeles, CA 90010<br><br>TELEPHONE NO.: **323-800-5405**   FAX NO. *(Optional):* **323-800-5406**<br>ATTORNEY FOR *(Name):* **Mario Evaristo Morones** | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **LOS ANGELES**
STREET ADDRESS: **111 N. Hill St.**
MAILING ADDRESS: **111 N. Hill St.**
CITY AND ZIP CODE: **Los Angeles 90012**
BRANCH NAME: **Stanley Mosk Courthouse**

CASE NAME:
**Morones v. County of Los Angeles, et al.**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [x] **Unlimited**  [ ] **Limited**<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | **21STCV29101**<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[x] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):* **5**
5. This case [ ] is  [x] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: **August 6, 2021**

Daniel C. Sharpe
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: **Morones v. County of Los Angeles, et al.** | CASE NUMBER **21STCV29101** |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto<br>Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property<br>Damage/Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal<br>Injury Property<br>Damage Wrongful<br>Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LASC CIV 109 Rev. 12/18
For Mandatory Use

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Morones v. County of Los Angeles, et al. | | CASE NUMBER | |
|---|---|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☑ A6005 Civil Rights/Discrimination | 1, ②3 |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1, 2, 3<br>1, 2, 3 |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1, 2, 3<br>10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2, 5<br>2, 5<br>1, 2, 5<br>1, 2, 5 |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case<br>☐ A6034 Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11<br>5, 11<br>5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 5<br>1, 2, 3, 5<br>1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6<br>2, 6<br>2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

Local Rule 2 3<br>Page 2 of 4

| SHORT TITLE: Morones v. County of Los Angeles, et al. | CASE NUMBER |
|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Judicial Review** | | |
| Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2, 8<br>2<br>2 |
| Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | | |
| Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| Toxic Tort<br>Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| Insurance Coverage Claims<br>from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2, 5, 11<br>2, 6<br>2, 9<br>2, 8<br>2, 8<br>2, 8, 9 |
| **Miscellaneous Civil Complaints** | | |
| RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| Other Complaints<br>(Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8<br>2, 8<br>1, 2, 8<br>1, 2, 8 |
| Partnership Corporation<br>Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| **Miscellaneous Civil Petitions** | | |
| Other Petitions (Not<br>Specified Above) (43) | ☐ A6121 Civil Harassment With Damages<br>☐ A6123 Workplace Harassment With Damages<br>☐ A6124 Elder/Dependent Adult Abuse Case With Damages<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name/Change of Gender<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2, 3, 9<br>2, 3, 9<br>2, 3, 9<br>2<br>2, 7<br>2, 3, 8<br>2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Morones v. County of Los Angeles, et al. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON: □ 1. ☑ 2. □ 3. □ 4. □ 5. □ 6. □ 7. □ 8. □ 9. □ 10. □ 11. | ADDRESS: Stanley Mosk Courthouse 111 N. Hill Street Los Angeles, CA 90012 |
|---|---|

| CITY: Los Angeles | STATE: CA | ZIP CODE: 90012 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ _____ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: 8/6/2021

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).
5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**08/06/2021**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ L. Castillejo _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br>**UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>21STCV29101 |

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✓ | John P. Doyle | 58 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record     Sherri R. Carter, Executive Officer / Clerk of Court

on 08/09/2021
(Date)                                         By L. Castillejo _____, Deputy Clerk

LACIV 190 (Rev 6/18)        **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

, The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )   FIRST AMENDED GENERAL ORDER
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2019-GEN-014-00

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

   i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

   ii) Bonds/Undertaking documents;

   iii) Trial and Evidentiary Hearing Exhibits

   iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

   v) Documents submitted conditionally under seal.  The actual motion or application shall be electronically filed.  A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

   a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

   b) The table of contents for any filing must be bookmarked.

   c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

   d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

      i) Depositions;

      ii) Declarations;

      iii) Exhibits (including exhibits to declarations);

      iv) Transcripts (including excerpts within transcripts);

      v) Points and Authorities;

      vi) Citations; and

      vii) Supporting Briefs.

   e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

   f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

   g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

   i) Any printed document required pursuant to a Standing or General Order;

   ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

   iii) Pleadings and motions that include points and authorities;

   iv) Demurrers;

   v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

   vi) Motions for Summary Judgment/Adjudication; and

   vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

6

2019-GEN-014-00

1   11) SIGNATURES ON ELECTRONIC FILING

2      For purposes of this General Order, all electronic filings must be in compliance with California

3      Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4      Division of the Los Angeles County Superior Court.

5

6          This First Amended General Order supersedes any previous order related to electronic filing,

7   and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8   Supervising Judge and/or Presiding Judge.

9

10  DATED: May 3, 2019                           

11                                               KEVIN C. BRAZILE

12                                               Presiding Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7
FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

LACIV 230 (NEW)
LASC Approved 4-11
For Optional Use

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties.  The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**   FAX NO. (Optional):<br>**E-MAIL ADDRESS (Optional):**<br>**ATTORNEY FOR (Name):** | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

| COURTHOUSE ADDRESS: |
|---|
| **PLAINTIFF:** |
| **DEFENDANT:** |

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".
    <span style="font-size:small">(INSERT DATE)</span>       <span style="font-size:small">(INSERT DATE)</span>

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

| | |
|---|---|
| _____ | ➤ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR PLAINTIFF) |

Date:

| | |
|---|---|
| _____ | ➤ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ➤ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ➤ _____ |
| (TYPE OR PRINT NAME) | (ATTORNEY FOR DEFENDANT) |

Date:

| | |
|---|---|
| _____ | ➤ (ATTORNEY FOR _____) |
| (TYPE OR PRINT NAME) | |

Date:

| | |
|---|---|
| _____ | ➤ (ATTORNEY FOR _____) |
| (TYPE OR PRINT NAME) | |

Date:

| | |
|---|---|
| _____ | ➤ (ATTORNEY FOR _____) |
| (TYPE OR PRINT NAME) | |

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| COURTHOUSE ADDRESS: | |
| PLAINTIFF: | |
| DEFENDANT: | |

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

LACIV 036 (new) <br> LASC Approved 04/11 <br> For Optional Use

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

     iii.   Be filed within two (2) court days of receipt of the Request; and

     iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐   Request for Informal Discovery Conference
   ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| **TELEPHONE NO.:**    FAX NO. (Optional):<br>**E-MAIL ADDRESS (Optional):**<br>**ATTORNEY FOR (Name):** | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| **COURTHOUSE ADDRESS:** | | |
| **PLAINTIFF:** | | |
| **DEFENDANT:** | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | **CASE NUMBER:** | |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

LACIV 075 (new)
LASC Approved 04/11     **STIPULATION AND ORDER – MOTIONS IN LIMINE**
For Optional Use                                                                                    Page 1 of 2

| SHORT TITLE. | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____ )

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

# FILED
LOS ANGELES SUPERIOR COURT

MAY 1 1 2011

JOHN A. CLARKE, CLERK
BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

General Order Re
Use of Voluntary Efficient Litigation
Stipulations

)
)
)
)
)
)

ORDER PURSUANT TO CCP 1054(a),
EXTENDING TIME TO RESPOND BY
30 DAYS WHEN PARTIES AGREE
TO EARLY ORGANIZATIONAL
MEETING STIPULATION

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

1  Whereas the Early Organizational Meeting Stipulation is intended to encourage
2  cooperation among the parties at an early stage in litigation in order to achieve
3  litigation efficiencies;

4  Whereas it is intended that use of the Early Organizational Meeting Stipulation
5  will promote economic case resolution and judicial efficiency;
6
7  Whereas, in order to promote a meaningful discussion of pleading issues at the
8  Early Organizational Meeting and potentially to reduce the need for motions to
9  challenge the pleadings, it is necessary to allow additional time to conduct the Early
10  Organizational Meeting before the time to respond to a complaint or cross complaint
11  has expired;
12
13  Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in
14  which an action is pending to extend for not more than 30 days the time to respond to
15  a pleading "upon good cause shown";

16  Now, therefore, this Court hereby finds that there is good cause to extend for 30
17  days the time to respond to a complaint or to a cross complaint in any action in which
18  the parties have entered into the Early Organizational Meeting Stipulation. This finding
19  of good cause is based on the anticipated judicial efficiency and benefits of economic
20  case resolution that the Early Organizational Meeting Stipulation is intended to
21  promote.
22
23  IT IS HEREBY ORDERED that, in any case in which the parties have entered
24  into an Early Organizational Meeting Stipulation, the time for a defending party to
25  respond to a complaint or cross complaint shall be extended by the 30 days permitted
26
27
28

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

 **Superior Court of California, County of Los Angeles**

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

### How to Arrange Mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **JAMS, Inc.** Assistant Manager Reggie Joseph, RJoseph@jamsadr.com (310) 309-6209
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

**3. Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

**4. Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm